May it please the Court, Sandra Lopez for the Federal Defenders in San Diego on behalf of Mr. Rivera. In this case, the District Court did have jurisdiction to review the issue of forced medication on dangerousness grounds, and the ongoing forced medication of Mr. Rivera is a violation of his rights since the emergency basis has passed and the government cannot establish the requirements set forth in cell. I'd first like to discuss the District Court's jurisdiction to review the issue of dangerousness. Let me stop you for a moment and ask you, can you bring this up to date? Because as I understand it, there was an emergency order entered or the doctors in Missouri acted in, I believe it was August, to medicate your client separate and apart from the matter that's pending before us on dangerousness grounds. And as I reviewed the discussion that took place at the District Court hearing, which I think was October, everyone seemed to assume that that had gone on, but there was no explicit discussion that I picked up on exactly what happened. The District Court entered its order, our panel declined to stay it, so presumably he's been medicated at least on occasion since October and possibly August. So now we've got, what, four or five months. Right. What's happened now? Well, what I believe is happening right now is that Mr. Rivera is being forcibly medicated based on two reasons. One, the August 31st letter that the facility began forced medication on an emergency basis, and two, to restore him to competency. So the dangerousness ground has continued. He's been medicated based on that ground as far as you know to date. Correct. And it seems like the District Court did not want to discuss the issue of this long-term treatment on this alleged dangerousness grounds because it felt that it did not have jurisdiction to review the issue. The District Court relied on 18 U.S.C. 4246 for the proposition that it did not have jurisdiction. You also didn't ask them, did you? Did you ask the District Court to? We did. Immediately after the August 31st letter, the defense counsel specifically requested an evidentiary hearing on this issue, and the evidentiary hearing was denied by the District Court. What I could tell from the briefs about that was that you asked for it in the sense that Judge Clifton just asked. He said we ought to find out what's going on. With that, we ought to be up to date on whether he's still getting it. You didn't object to the dangerous finding, did you? Actually, the request for the evidentiary hearing was appropriate under the circumstance because if we read 28 CFR 549.43b, which allows for some medication on an emergency basis, the medication must stop once the emergency passes. Accordingly, the defense counsel requested an evidentiary hearing to determine what is the condition of Mr. Rivera at that time. The problem seems to be cell says you don't reach the cell with questions if it's being done on dangerousness. Right. But the District Court still has to go through the Harper type test to determine whether or not the inmate was taken through the proper administrative procedures for allowing forced medication on a long term basis. Here there was no administrative procedures done. So that would seem to be the real issue at the moment is whether the dangerous determination was proper and whether that was challenged. But you're not even talking about that on this appeal, are you? Well, we are. We are because the after remand, we received the August 31st letter. And what the defense counsel specifically requested was an evidentiary hearing on this basis so that we can move forward after the August 31st letter. So, one, and because the facility did not undergo the proper administrative procedures as set forth in Harper, long term administration of medication for dangerousness reasons is inappropriate. And moreover, as a matter of law, medication on this alleged emergency basis is inappropriate as well. So where is that issue? I mean, the District Court doesn't give you an evidentiary hearing for any purpose at that stage and says that that issue belongs in the Western District of Missouri. First factually, has anything happened in the Western District of Missouri? No. So everything is here. Correct. But I didn't really find a direct challenge to that ground. And Sells pretty specifically tells us go to that issue before you get to the issue of restoring competence for trial. Correct. So I'm a little lost as to why we're here. If the dangerousness ground was entered in August, as far as you know, remains in place to date, Supreme Court tells us do that first. Is there any issue about the restoring competence to trial for us to entertain at this point if he's being medicated on dangerousness? And I believe so, because what we did, what the defense counsel specifically requested was an evidentiary hearing on this basis. But isn't that the remedy for that, to order an evidentiary hearing on that basis, if you're right, that you're entitled to an evidentiary hearing on that basis in the District Court here? Then wouldn't the remedy be for us to say that and, again, still not reach the Sell issue? I believe even if there were an evidentiary hearing on this dangerousness ground, the District Court's order should be reversed because, first of all, as a matter of law, the August 31st letter is insufficient to allow a continued forced medication of Ms. Rivera. The August 31st letter did state that it was medicating Ms. Rivera on that one-time basis on August 31st, but it stated that it would continue forced medication in order to avert any future dangerous behavior. The regulation itself limits emergency medication on that one-time basis. If the facility were to seek long-term administration of drugs for purposes of long-term dangerousness behavior, then it had to seek the proper administrative procedural safeguards. None of that was done. Well, that's not the argument I remember reading, though. I mean, the argument presented to us, it seemed to me, on both sides, focused very much on the Sell's justification, restoring competence to trial, as a stand trial. And you may be right saying that, look at the administrative regulations, and they didn't comply with the requirements. But that's not the argument I think I read when I prepared for this case. So I'm sort of adrift as to how we're supposed to pick up that issue on the fly. Is that what was argued in the opening brief? Well, it was argued in the opening brief in that. You do at page 61 to 65 at the very end. So I think the question really is, do we ignore the first 61 pages, which as Judge Clifton says, what seemed to be the issue, the Sell issue, is what obviously both parties were briefing in this case. Right. And I believe. You did raise, I thought initially you didn't, but you did raise in the last four pages the question of whether you should have had an evidentiary hearing on the August 31st letter. But that goes to the evidentiary hearing. That doesn't go to this argument I think I'm hearing, which says they couldn't have done it that way anyway. Correct. Because the thing is, as a matter of law, the August 31st letter in and of itself is insufficient to allow this prolonged dangerousness medication. The CFR only allows medication on this one-time basis. Once that passes, it was the facility's or the government's burden to request. They can't do it as long as he remains dangerous? No. The CFR specifically states that medication is only allowed during dependency of this immediacy, immediate threat. Once that passes, the inmate is entitled to due process under the administrative hearing set forth in the CFR. But they can still do it for dangerousness, but they have to have an administrative hearing. Correct. Okay. But as long as they're continuing to do it on the basis of dangerousness, which apparently they are. Without any due process. Without due process. Right. You don't reach the cell question. You then litigate the dangerousness question. Right. And you claim all the things you're claiming, right? But I do believe that the district court really emphasized its order authorizing forced medication on the cell test and just ignored the forced medication on dangerousness grounds. Well, the district court said it didn't have jurisdiction over that. Right. And that was incorrect. Okay. Well, let's assume all of that. Let's assume, A, the district court's wrong. The state, the government's wrong. Everybody's wrong. And the government is now administering this medication based on a dangerousness finding that's incorrect. And you are entitled to be in the district court and say, look, they haven't followed the right procedures. We are in the right jurisdiction. We want to stop this being done on dangerousness. It's being done in violation of due process. Isn't the remedy, and this is where I started, I think, isn't the remedy that we would remand to the district court and say, hold that hearing, make that determination about whether they're violating his rights by giving him medication on the basis of dangerousness? We would agree to that if the facility indicated in its August 31st letter that it was seeking an order from the court to administer medication on a long-term basis. But the main reason set forth in the August 31st letter was for emergency grounds. But the district court's order, the October 4th, whatever, late October order, recites and maybe challenges, but it makes the point of saying the government opposed. I mean, it discusses the mootness issue, which is how I got off into this thing. I kept wondering, well, Sells is explicit in saying deal with dangerousness first. And the district court, presumably cognizant of that, says that defendant has not challenged the involuntary medication on dangerousness grounds. Now, I'm not entirely clear if he meant has not challenged because it doesn't belong here as opposed to Missouri or not challenged. When I first read it, I took it literally, meaning that you didn't beef about that in front of the district court. Well, actually, if we read that excerpt of the record in its entirety at 391, what the district court was saying was that the defense counsel did not challenge dangerousness at the magistrate level. But issues of dangerousness were not determined at the magistrate level. Specifically, at excerpt of Record 75, the magistrate said, We may go forward solely on the Sells standard, and if it fails, you, the government, may wish to then proceed on the Washington v. Harper. The magistrate did not make a determination as to the Sells issue. So the magistrate just went to the Sells issue. There was no objection because it wasn't an issue before the magistrate judged. The dangerousness issue first came up when the facility indicated on August 31st that it was medicating Mr. Rivera on an emergency basis. Accordingly, right now, what the government is seeking is forced medication on an emergency basis. There's no indication that it's seeking medication on a long-term basis. Accordingly, as a matter of law, if we look at the regulation, once the emergency passes, the facility cannot continue forced medication in order to avoid future dangerousness or potential risk of emergencies. But the point is that we seem now to be in a posture of having a dispute over their administration of this medication on the basis of dangerousness, not on the basis of getting him ready for the trial. And as Judge Clifton said, the Sells says that you don't reach the second issue of this being done on the dangerousness ground. So aren't we really – isn't our job now to decide first your issue of whether there's an error in any respect in what's before us with respect to the administration of the drugs on the basis of dangerousness? And if we say, yes, there is, then – well, if we say there's not, it's perfectly fine, that's the end of it. And if we say, yes, there is an error on the ground of dangerousness, that they didn't follow procedures or you didn't get a hearing or whatever, then we would – shouldn't we just remand on that issue and not reach the Sells issue? I guess I would agree with the Court if the government were seeking forced medication on dangerousness grounds for a prolonged basis. But that request was never made. Even then, don't we just – isn't that the question? They are continuing to do it, apparently, on the grounds of dangerousness. And don't we have to tell them to stop if they're right? I would agree with that, but I also – But you think we can still then go beyond that issue and say – and further, not only must you stop, but you can't resume the Sell justification either. Correct. I think, first of all, I would request that this Court make a determination of whether forced medication can continue on this emergency basis ground if there's no emergency there. And two, that forced medication for purposes of restoring Mr. Rivera to competency is also not met. All right. Ken? I hate to extend the time, but let me pose one factual question, and I'll ask the government, too. Do you have any information or have any reports come from Springfield with regard to your client's current condition? He's been medicated for like four or five months now. Correct. Has he been restored to competence? I mean, is he not dangerous? You have no information? I don't have any reports regarding him. Thank you, Ken. Thank you. May it please the Court, Garrett Heenan for the United States. Judge Reinhart, I think you raised this during Appellant's argument, and it was correct that Appellant has not raised an objection to the emergency medication in the District Court. The emergency medication was initiated approximately August 31, 2004, shortly before the District Court spread the mandate of this Court on the prior appeal that was taken up. And no objection was raised. Defense counsel, Appellant counsel, Health counsel was made aware that this emergency medication was going on and requested an additional evidentiary hearing to address the cell issue. Now, the emergency medication, I think one thing Appellant said was correct, which is that emergency medication could stop at any time. If the doctors at Springfield determined that the dangerousness has passed, they could stop the medication. And then we'd be right back where we started, where the government is trying to render the defendant competent to stand trial. And for that reason, I think the Court does need to address the cell issue and, in a sense, ignore the emergency medication that's going on on dangerousness grounds. Is this the kind of medication that has to be continued indefinitely to restore him to competency? Your Honor, for purposes of restoring competency, obviously there are doctors at Springfield Medical Center. Dr. Sarazin is the treating physician in this case. He would propose to treat the defendant with different medications, trying to find a medication that would permit the defendant to assist counsel and to become competent in standing trial on the charge that is present in this case. Judge Clifton asked about what his current status is. August 31st, he was medicated with Geodone. Geodone is a typical antipsychotic medication. The government's understanding is that medication does continue, but there's been no instruction to the Bureau of Prisons, and the Bureau of Prisons has not attempted to determine whether or not the defendant could become competent to stand trial. Because, frankly, we don't want to engage in an end run around this Court and use emergency medication that was deemed necessary in this case as just simply a means to get the job done under 4241 to determine whether the defendant can become competent. We want to do it the appropriate way, and I think the appropriate way is to address the cell issue, which has been pending for quite some time. Well, you've had a cell order since October, which our court elected not to stay. The district court didn't stay it. We didn't stay it. Has there been any medication given to a defendant pursuant to that order, separate from the emergency medication? Not pursuant to the cell order, Your Honor. So even though the cell order was not stayed, it hasn't really activated yet. It hasn't caused anything to happen yet. That is correct. Now, would the medication be different? I apologize for my ignorance, but has it been given whatever medication you just identified for the dangerousness reason starting in August, if and when the cell order goes into effect, does that contemplate some different kind of medication separate and apart from what has been given for the dangerousness ground? Your Honor, it could, and really that is the province of the treating doctors. Geodone, which is one of the typical anti-psychotic drugs, it has perhaps one could say more potent powers in terms of sedating and calming the disorganized thinking of an individual who is medicated with it. It is an effective drug when it is prescribed on an emergency basis. This defendant has been in custody since September 2003. His time in confinement, he was in seclusion most of the time, and his psychotic symptoms were exacerbated by his time in custody. And that is really what led to, we attempted to get an order to involuntarily medicate the individual pursuant to cell, solely to render him competent to stand trial. Unfortunately, the extended length of time in custody for this defendant, his mental state deteriorated. And it got to a point where the doctors felt it was appropriate, it was necessary to medicate him on an emergency basis. Counsel, is there a Supreme Court case that allows you to do that? Certainly, Your Honor. Without consent of the person involved? Certainly, Your Honor. Obviously, Congress created Section 4241, Title 18, the mechanism in which a defendant may be hospitalized to be rendered competent to stand trial. The Supreme Court, in 2003, in the case of Cell v. United States, set forth the controlling four-factor test. And it's precisely that test that District Judge Jones applied in this case. And he did a particularly careful job. If you look at the District Court's opinion, it's approximately 25 pages. The evidence on the record is certainly sufficient to find that District Judge Jones did not commit any clear error in his ordering involuntary medication under Cell. The Supreme Court doesn't really look kindly upon doing this without the consent of the party or someone who is in a position to do that for him. Your Honor, certainly, if a defendant could consent or would consent to the use of medication while hospitalized pursuant to 4241, that is preferable. Most defendants who are hospitalized under that statute do require some type of medication. Many of them voluntarily consent to take the medication. Right. In this instance, Mr. Rivera-Guerrero has not consented. But given the Supreme Court ---- He's vehement about doing anything. I'm sorry, Your Honor? He's vehement about doing anything in this case. The defendant? Yes. He does not wish to have medication. And it's for that reason that we have to look to the Cell decision, the Supreme Court's Cell test, to determine whether or not this is an appropriate circumstance to provide medication. It falls under that category. I absolutely believe it does, Your Honor. It falls under that category because there is a very important government interest at stake here. The defendant is charged with a serious offense, that offense being reentry of a previously deported alien. But it's an offense that has a 20-year statutory maximum. The statutory maximum is elevated by the fact that this defendant has prior convictions for attempted kidnapping and first-degree burglary. That elevates, certainly, the importance of the government's interest in prosecuting this defendant. Involuntary medication under Cell is also ---- It will significantly further the government's interest in that it will help render the defendant competent to stand trial. It is necessary insofar as there's no other means. The district court has found that there is no other alternative means that might be used that would help render this defendant competent to stand trial. Magistrate Judge Porter, in this case, specifically followed a suggestion of the Supreme Court that ---- to try to determine whether her contempt power, whether she could order the defendant under power of contempt to take the medication. And she found that that would not suffice. And finally, whether or not the medication is medically appropriate, we have a significant record on that, I believe, that the doctors at Springfield, who are very knowledgeable about these things, and don't prescribe just one medication for every defendant they see. They assess the defendant. They try to find the appropriate medications that will assist in meeting the demands that the government requires. And here, that is rendering the defendant competent to stand trial. Let me focus on that for a second. There was substantial testimony from the doctors in Springfield about the alternative drugs that might be used. And I understand the process. You try something, a certain dosage, and see what happens, and you make your decisions from there. The defendant argues that he didn't really have an opportunity to speak to that because the defense had something like two weeks, or slightly less than that, notice from when they learned about this until the hearing occurred, and did not have specific notice of what drug treatment in particular might be proposed, did not have the opportunity under the circumstances to retain an expert to speak to that, and there was no expert testimony, as I understand it, offered by the defendant at the evidentiary hearing that took place in February, now nearly a year ago. Now, of course, at that time, you didn't expect to be dealing with this here a year later. But a year has passed since then, and there was not, when the evidentiary hearing was requested before the district court, that request was denied. You look at SELL, and SELL discusses what happened there and seems to contemplate testimony on behalf of an expert witness for defendants speaking specifically to the particular drug treatment being proposed. Was there a fair opportunity for that here from defendant under the circumstances that this unfolded? Judge Clifton, there were myriad opportunities for a defendant to raise this. As early as October 30, 2003, that's initially after Dr. Zilberman at the Federal Detention Center in San Diego had determined the defendant was presently not competent to stand trial. The October 30, 2003 hearing, the issue was raised, and defense counsel realized there might be a possibility of involuntary medication along SELL lines. This is appendix page 18. The issue was at least acknowledged, possibly, that it could be coming out by defense counsel. February 6, 2004, the issue was raised in court. The doctors from Springfield were telephonically, they appeared at court, and at that point, the magistrate judge, Judge Porter, apprised the parties that the doctors were specifically requesting permission to involuntarily medicate the defendant. And at that hearing, February 6th, this is appendix page 39 and 40, the defense counsel asked and the doctors said what medications they were considering, possibly. And there are several medications listed there in the appendix of those pages. The defense counsel requested 13 days until the February 19th hearing. I believe that Magistrate Judge Porter wanted to put it on earlier. The defense counsel requested some additional time. She indicated she was in trial, and that time was granted. And furthermore, at the defendant's request, a videoconferencing was done at the February 19th SELL hearing to allow not just the doctors, Dr. Saraz and Amarad, to appear, but the defendant himself to appear also. At that hearing, the defense counsel engaged in vigorous cross-examination of the doctors. She appeared, reading from the appendix, very knowledgeable of the issues and what the doctors were proposing, and it was only at the end of the hearing, presumably because she saw what she was up against there, that she at that point requested an opportunity to bring in some expert testimony of her own, something she could have done previously, could have done the day of that hearing because she had 13 days' advance notice. In fact, the issue of the February 19th hearing was later appealed up to District Judge Jones, and a hearing was held before Judge Jones on March 10th, and he heard argument. There was briefing in district court. And again, there was no – at this point, defense counsel brought articles to the attention of District Judge Jones, but no expert testimony. Certainly, she could have – Were they given an opportunity by Judge Jones to offer additional evidence? The – no expert testimony was offered at that hearing, Your Honor, but defense counsel did not attempt, to the government's knowledge, to offer any expert testimony. The article – the defense counsel did submit articles to the court, and ultimately the articles were deemed hearsay by the district judge and not accepted, but there were certainly – What was the reason for denying the continuance to get an expert? What was the interest in not allowing the – I understand you think that she should have done it earlier, but did the government say there was any prejudice? Was there any argument made? Was anybody inconvenienced by giving her another week? Your Honor, I think at every step of the way, the district court approached this matter with an acknowledgment, an understanding that these issues should be addressed quickly. These are not – we have a defendant who is hospitalized. Well, the question – the question was bringing him to trial. What was the urgency of bringing him to trial once he was incarcerated anyway so that you couldn't allow the other side to present expert testimony? What was the prejudice to the government? Your Honor, there – Did anybody say this was an inconvenience to district court? He was going on a fishing trip. Did anyone say that witnesses would not be available a week later? You know, usually there's a reason why. The court's got a calendar. It's much too busy to take care of these problems that inconvenience it. Is there some? Well, Your Honor, there is the Speedy Trial Act that obviously under the relevant statute – Well, here we are a year or two later, and if that were the problem, the Speedy Trial Act, that you couldn't give him a week to get a witness, this would be all over by now. So what was the problem? I mean, normally if you deny a continuance, there's some reason. I haven't – I didn't see any in the record. Your Honor, the reason I think is there. It is that the defendant had abundant opportunities to bring forth expert testimony, and to this day they still have that right to do that. It has not been dialed. I mean, they requested an evidentiary hearing when it got back to the district court in the fall, and that was denied. The judge wouldn't take articles as such, and I understand that on evidentiary grounds. But when it first went to the district court, it went on an appeal. And I'm not familiar with the practice in the Southern District of California, but it's not, to my knowledge, common to submit evidence or to expect the opportunity to present witnesses when you're – when the district court's entertaining an appeal for a magistrate's order, which is what it was last spring. And by the time it comes back in the fall, it appears that – and it may have been the request was focused on the dangerousness ground, which Judge Jones didn't think he had jurisdiction over. But for whatever reason, it doesn't appear that there was an – an evidentiary hearing was not invited or held in the fall either. Your Honor, in that respect, I would note that in the court's previous opinion in this case, the previous appeal, the court specifically noted in the opinion authored by Judge Dorothy Nelson that the district court judge, Judge Jones, was free to have a new evidentiary hearing or he could simply apply the appropriate standard of review, a de novo review, and pass on the facts that were presently before him. There was no – Well, the latter is what occurred. That is correct, Your Honor. So I understand the panel opinion. I'm not seeking to criticize that at all. It's simply setting out alternatives. The passage of time by itself and the intervention of an additional factor, which Sell tells – seems to tell the court to entertain first, the court elected not to, and I can only infer it's because the court didn't think it had authority, hence the prisoner at that time was in Springfield, no longer within the geographical area of the southern district. But there wasn't an evidentiary hearing, and so we're still looking at a record where the only evidentiary hearing was something that took place February – I've forgotten the date, but very early on in the process, at least from the perspective of a year later. Now, nobody expected to be here a year later, and I understand that, but that is where we are. And so when you say, well, they could have submitted evidence, I'm just not sure when the opportunity was there for them to submit evidence or when the district court was receptive to it. Your Honor, I see my time has expired. I would submit that there was ample opportunity to submit evidence in the first instance, notwithstanding the fact that there was no evidentiary hearing following the remand. And unless there are other questions from the court, I would simply request that the court affirm the order in this case. Thank you. Thank you. I would just like to point out two important issues. First of all, the defense counsel did request an evidentiary hearing before the magistrate judge, a continuance before the magistrate judge, and also when it appealed it to the district court. And again, after remand and all these times, the evidentiary hearing was denied. I'd also like to address. The counsel said you didn't, when you, after the first, when the magistrate judge denied the continuance, you then appealed his ruling, as it was put it, to the district judge. At that time, you say you asked for an evidentiary hearing? Correct. The defense counsel did point out that the. No, I don't know what they pointed out. Did he ask for the opportunity to put on evidence? Yes, she did. And, in fact, in the district court's order in March, excerpt of Record 271, the district court pointed out that Mr. Rivera was given the opportunity to call an expert at the hearing and denied a continuance for the evidentiary hearing. And again, after the court of appeals remanded the matter, the defense counsel again requested a continuance for an evidentiary hearing, and that was also denied in October. I would like to just briefly address the fact that the government cannot establish the threshold requirement set forth in cell that the government has an important interest in prosecuting a serious crime. The Supreme Court in cell indicated a serious crime as a serious crime against a person or a serious crime against property. Okay. That recovered pretty fully in the brief. Are there enough factual questions here that, as a matter of fact, I did. Well, I'll go ahead and bring you through. Well, I would just like to point out that now the government is making the reference to Mr. Rivera's criminal history. But if we notice in the district court's October ruling, there is no reference whatsoever to Mr. Rivera's criminal history. And the district court solely relies on the fact that Mr. Rivera could have faced anywhere from two to ten years. Well, that implicitly refers to his criminal history, doesn't it, because it reflects the kind of calculations that would go into sentencing under the possibly still existing sentencing regime under the sentencing guidelines reflecting his prior convictions. Well, according to the government, he could face anywhere up to 20 years for aggravated felonies, and that wasn't 20 years wasn't referenced in the district court's order. The district court said that Mr. Rivera could face anywhere from two to ten years. Thus, the district court was solely relying on the fact that because Mr. Rivera can face two to ten years, he would have a right to a jury. Using this right to a jury test, it determined that a 1326 violation is a serious crime under CEL. However, I think that's the inappropriate test because it totally ignores the language in CEL that forced medication should only be applied in rare circumstances. This is may be rare. It doesn't say is. And it also says look to the individual case. In the individual case here, we have somebody who's come back 23 times and who does have a criminal record. But if we look at the record itself, the government did not present any evidence regarding Mr. Rivera's state crimes. There was no records of the state presented to the district court. It was only mentioned briefly in passing that he had a prior conviction for burglary and attempted kidnapping. It wasn't developed within the record of how serious those crimes were. And if we look at the district court's order, it looks like the only issue relied upon by the district court was the fact that this was a felony and the felonious nature of this crime. But if we look at the core conduct that the government is seeking to prosecute, the core conduct is Mr. Rivera's mere presence in the United States. Since Section 1326, the only act that's required is mere presence. And if we look at the probable cause statement attached to the complaint, which is that excerpt of record 2, there's no indication that Mr. Rivera was dangerous when he was caught by the Border Patrol. It even indicated that he fully cooperated with the Border Patrol agents. Thank you, counsel. I just want to ask counsel for one other question because we didn't really have any briefing on the dangerousness issue. Counsel said that there is a requirement for an administrative proceeding in order to have a dangerousness hearing. Is it your position that all of that was complied with? It is, Your Honor. And I believe with what's required to do medication on dangerousness grounds, there is a sheet that must be filled out by one of the doctors, and that is an appendix. I have the appendix. Well, I didn't really mean that. You said that all the administrative procedures are complied with. Yes. Do you have a position on whether the jurisdiction is properly in this court or in the court in Springfield? Your Honor, because the issue has not been raised by appellant, I would not take a position on that right now. If we need one, we can always ask. Thank you. All right. The case just argued will be submitted. The court will take a brief recess. Thank you, Your Honor. Thank you, Your Honor. Thank you, Your Honor. How are you doing, Phil? I don't know. I think it's probably going to be five minutes. Five minutes. Long morning. I haven't been here. It's been very empty. It hasn't. Yeah, I saw that too. No. I think if we get in there much longer, we'll have grilled cheese sandwiches and soup. Is there a reason they didn't have three panels or three courtrooms at this time? They're getting caught up on all the cases? Well, there's mold that's visible in the hallway too. This can't be any too good. That was a good issue, huh? Yeah. Oh, yeah. What can you say? They still haven't ruled. So, yeah. It's probably an issue. I'm just going to do pretty much the four courtrooms. If you can, are there footboards, you know, where it's going to be inside? That's why I'm psychic. We checked the half hour before court started. Yeah, exactly. I had my friend check. Yeah, the order list got handed down. There's a Goldstein towel. Yeah, I know. I know. Yeah. Yeah, it is good. And so, you know what else is good? Howard Bashman has some good stuff. Yeah. Yeah. Yeah. So, yeah. I'll tell you, there's no work out in his insides. I think he's bottled up. Oh, they're all on that. I've had a ton of them. They're just sitting there. Oh, you have Maven. That's right, because I have James. We have both of those cases together. How funny. Exactly. Yeah. The three of us. Yeah. Yeah. I'd be curious to see what they've been doing. I don't think you can actually. I really don't think. Yes, sir. I don't think you can. Certainly not. I think you can. I think you can. If the guy was completely unconstituted, you know, unacceptable, then they'd just get upset. And that would be annoying. How does that work? That's going to be a bottle opener. There's a bottle opener. Yeah. I'm a little afraid that you're raising a kid. Can you walk more? I guess you could appeal to someone. I have my own practice for about 11 years. So I was there for five years on and off.  Full-time. Yeah. Partly. Since I moved, I've never been on the floor, and I just felt like this was the place to be. It is. Is that a fairly simple job? The learning district is not. In my case, I've been teaching really big ones. At least the learning district. I know. We don't have small classes. Here it's pretty simple. You guys are asking a lot of questions, and you have a much bigger program. For every reason, as far as saying it seems like. Your office. And your kids. They say a lot of things. And their lives. And we were quite complex. So. Yeah. Yeah. Yeah. Yeah. Yeah. Yeah. Yeah. Yeah. Yeah. Yeah. Yeah. Yeah. Yeah. Yeah. Yeah. Yeah. Yeah. Yeah. Yeah. Yeah. Yeah. Yeah.  Yeah. Yeah. See on the other side? Yeah. Yeah. Yeah. Yeah. Yeah. Yeah. Yeah. Yeah. Yeah. Yeah. Yeah.   Yeah. Halfway there.  Yeah. Yeah. Good. Yeah. Yeah. Yeah. Yeah. Yeah. Yeah. Yeah. Yeah. Yeah. Yeah. Yeah. Mm hmm. Yeah. Mm hmm. Yeah. Okay. Yeah. Okay. Okay. Okay. Okay. Okay. Okay. Okay. Okay. Okay. Okay. Okay.  Okay. Okay. Okay. Okay. Okay. Okay. Okay. Okay. Okay. Okay. Okay. Good morning again, ladies and gentlemen. The next case for oral argument is United States vs. Manukian and Unukan.
judges: Reinhardt, Clifton, Weiner